UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SUPER EXPRESS USA PUBLISHING         :
CORP. on its own behalf,              :
                                      :
SUPER EXPRESS USA PUBLISHING         :
CORP. as assignee of rights of        :
REPROPOL-POLISH ASSOCIATION OF       :
PUBLISHERS,                           :
                                      :
REPROPOL individually,                :
                                      :
SUPER EXPRESS USA PUBLISHING         :          **OPINION AND ORDER**
CORP. as assignee of rights of        :          13-cv-2814 (DLI)(JO)
PRESSPUBLICA SP. Z O.O.,             :
                                      :
PRESSPUBLICA SP. Z O.O. individually, :
                                      :
            Plaintiffs,               :
                                      :
         -against-                    :
                                      :
SPRING PUBLISHING CORP., d/b/a        :
POLSKA GAZETA, JANUSZ CZUJ,           :
                                      :
            Defendants.               :
------------------------------------------------------x

**DORA L. IRIZARRY, Chief Judge:**

Plaintiffs Super Express USA Publishing Corporation ("Super Express USA"),

REPROPOL ("Repropol"), and Presspublica SP. Z.O.O. ("Presspublica," and collectively,

"Plaintiffs") allege that defendants Janusz Czuj ("Czuj") and Spring Publishing Corporation

("Spring Publishing") copied Plaintiffs' news articles, editorial pieces and photographs and

inserted them into Czuj's publication without compensating Plaintiffs or obtaining their

permission.  (Am. Compl., Dkt. Entry No. 36; Memorandum of Law in Support of Motion for

Summary Judgment ("Motion" or "Mot."), Dkt. Entry No. 65-4.)  Plaintiffs now move for

summary judgment on their claims of copyright infringement in violation of the Copyright Act of

1976, 17 U.S.C. § 501(a) (the "Copyright Act"), violation of the Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 512, misappropriation and fraud, unjust enrichment, unfair and deceptive practices, false designation of origin, and unfair competition. (Mot. at 1.)

For the reasons set forth below, Plaintiffs' motion for summary judgment is granted as to their copyright infringement claim, in part, and is otherwise denied.

## BACKGROUND

### A. Parties

Super Express USA is a New York-based company that publishes a daily print newspaper, as well as an online edition, for Polish Americans. (Pl. Rule 56.1 Statement ("Pl. R. 56.1 St.") at ¶ 2, Dkt. Entry No. 65-1.) Presspublica is a Polish company that publishes two daily national newspapers in Poland called "Rzeczpospolita" and "Uważam Rzre," respectively, also in both print and online formats. (*Id*. at ¶ 3.) Although each of Presspublica's periodicals originate in Poland, they are distributed in the United States. (*Id*. at ¶ 4.)[1]

Presspublica is a member of Repropol. (*Id*. at ¶ 5.) Repropol is an association of authors and publishers based in Poland established for the purpose of providing copyright protection for its members. (*Id*. at ¶ 7.) According to Plaintiffs, Repropol has the authority to sell or assign rights and supervise royalty licensing for many Polish publishers. (*Id.*) Repropol's central mission is to ensure the proper distribution of royalties "to and among [its member] publishers and authors." (Declaration and Affidavit of Maciej Hoffman and Jan Rurański ("Hoffman and Rurański Aff.") at ¶ 3, Dkt. Entry No. 65-9 (Exhibit D).)[2] Plaintiffs claim that, by virtue of membership in the

---

[1]     Herein, the Court refers to Super Express USA and Presspublica collectively as the "Publisher Plaintiffs."

[2]     Maciej Hoffman and Jan Rurański are members of the management board of Repropol. (Hoffman and Rurański Aff. at ¶ 1.)

association, publishers give Repropol the authority to prosecute copyright infringements on their behalf.  (Pl. R. 56.1 St. at ¶ 9.)

Defendant Spring Publishing is the publisher of *Polska Gazeta*, which is a Polish-language newspaper whose principal place of business is in New York and is distributed throughout several states within the United States.  (Pl. R. 56.1 St. at ¶ 11.)[3]  *Polska Gazeta* publishes both print and online daily editions.  (*Id*. at ¶¶ 12-13.)  Czuj is the founder of Spring Publishing and is its sole shareholder.  (*Id*. at ¶ 14.)  Czuj also is the president and editor-in-chief of *Polska Gazeta*.  (*Id*. at ¶ 16.)  Czuj has final decision-making authority regarding the captions attached to reprinted articles in *Polska Gazeta* or references to the source of an article.  (Deposition Transcript of Janusz Czuj ("Czuj Tr."), Dkt. Entry Nos. 67-4 through 67-6, at 108-109.)

### B.  Publication of Newspaper Articles

Plaintiffs contend that to find the content that ultimately comprised issues of *Polska Gazeta*, Czuj typically searched the internet for news articles, editorials and photographs previously published in other Polish newspapers and inserted those items into his own daily editions.  (Pl. R. 56.1 St. at ¶ 23.)  During his deposition, Czuj acknowledged that primary source material was a less frequent feature of his publication and that he principally republished articles from internet sources.  (Czuj Tr. at 72.)  However, Czuj subsequently amended this position, stating in a declaration that *Polska Gazeta*'s editorial material is "developed from its own sources" and that it has reciprocal sharing arrangements with various Polish publishers who permit *Polska*

---

[3]        Although Spring Publishing is a defendant in this action, its liability, if any, is not before the Court at this time.  On March 10, 2015, Plaintiffs moved for Default Judgment against Spring Publishing (Dkt. Entry No. 54), a motion which was referred the following day to United States Magistrate Judge James Orenstein to conduct an inquest, if necessary, as to damages and/or attorney's fees.  On April 21, 2015, Judge Orenstein deferred ruling on Plaintiffs' motion for default judgment against Spring Publishing until this Court decided Plaintiff's motion for summary judgment against Czuj.

        In addition, claims as to a third defendant, Andrzej Czuj, were dismissed on September 2, 2014.

*Gazeta* to reprint articles and photographs. (Declaration of Janusz Czuj ("Czuj Decl.") at ¶ 2, Dkt. Entry No. 66-3.) Czuj indicated that these sharing arrangements had not been reduced to written agreements. (Czuj Tr. at 77.) Additionally, Plaintiffs contend that Czuj does not compensate the original sources of the reprinted articles nor does he credit them for their work. (Pl. R. 56.1 St. at ¶ 30.) During his deposition, Czuj expressed his belief that publication in a New York City-based periodical has value in and of itself as it "elevates" the author of the material. (Czuj Tr. at 76.)

### C. Lawsuit Chronology

Plaintiffs assert that on March 22, 2011, Super Express USA forwarded *Polska Gazeta* a written cease and desist letter demanding the cessation of all unauthorized copying of its materials and the payment of royalties for previously copied materials. (Pl. R. 56.1 St. at ¶ 69.)[4] Plaintiffs contend that following his receipt of the cease and desist correspondence, Czuj continued to copy their written materials without permission or compensation. (Affirmation of Paul T. Sabaj ("Sabaj Affidavit" or "Sabaj Aff."), Dkt. Entry No. 65-43 (Exhibit F) ("Infringements Chart").)[5]

Plaintiffs filed a complaint in this Court on May 10, 2013 (Compl., Dkt. Entry. No. 1), which was amended on July 15, 2014 (Am. Compl.). Plaintiffs now move for summary judgment on all of their claims, seeking statutory damages for each claim of infringement under the Copyright Act, permanent injunctive relief, costs and reasonable attorney's fees. (Mot.)

---

[4]    Czuj questions the authenticity of the letter, which Plaintiffs attached to their motion as Exhibit I (*see* Dkt. Entry No. 65-46). (Def. Response to Pl. R. 56.1 St. at ¶ 69, Dkt. Entry No. 66-7.)

[5]    Paul T. Sabaj is the attorney for Plaintiffs. (Sabaj Aff. at ¶ 1.)

**DISCUSSION**

**I.      Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations and internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (internal citation omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal citations and quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II.    Choice of Law

This case involves journalistic works created and published by Polish nationals in Poland, and allegedly infringed in the United States. Accordingly, one of the threshold issues in this matter is a determination of which country's substantive law controls this copyright dispute. (Mot. at 8-9.)[6]

In *Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82 (2d Cir. 1998), the Second Circuit Court of Appeals set forth a fulsome analysis of the choice of law issues in copyright cases, an area of the law that largely had been overlooked by the federal courts. *Id.* at

---

[6]        In the Motion, Plaintiffs address this issue in only a cursory fashion. (*See* Mot. at 8-9 & n.6.)

88-89.  In *Itar-Tass*, the court endorsed the "national treatment" principle of the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention") and the Universal Copyright Convention ("U.C.C."), as interpreted by Melville Nimmer's treatise.  *Id.* at 89; *see* Berne Convention for the Protection of Literary and Artistic Works, Paris Text, July 24, 1971, Art. V(1)-(2), S. TREATY DOC. NO. 27, 99th Cong., 2d Sess. 40 (1986), *available at* World Intellectual Property Organization ("WIPO"), http://www.wipo.int/wipolex/en/treaties/text.jsp?file_id=283698 (last visited March 24, 2017); *Rundquist v. Vapiano SE*, 798 F. Supp.2d 102, 131 n. 16 (D.D.C. 2011) (citing Contracting Parties, Berne Convention, WIPO, *available at* http://www.wipo.int/treaties/en/ShowResults.jsp?lang=en&treaty_id=15 (last visited March 24, 2017) (indicating that Poland is a signatory to the Berne Convention).  Pursuant to this principle, "an author who is a national of one of the member states of either Berne or the U.C.C., or one who first publishes his work in any such member state, is entitled to the same copyright protection in each other member state as such other state accords to its own nationals.'"  *Id.* (quoting *Nimmer on Copyright* § 17.05 (1998).  The Court recognized, however, that the choice of law analysis is "not necessarily the same for all issues," and, therefore, the choice of law applicable to issues of ownership deserves a separate analysis from that applicable to issues of infringement.  *Id.* at 90.

With respect to choice of law applicable to ownership, the situation here is similar to that in *Itar-Tass*, where, because "the works at issue were created by Russian nationals and first published in Russia, Russian law [was determined to be] the appropriate source of law to determine issues of ownership."  *Id.*  Here, because the works before the court were created by Polish nationals and first published in Poland, Polish law will control the Court's determination of ownership issues raised in the Motion.

On the other hand, the choice of law analysis applicable to infringement issues is governed by the "doctrine generally applicable to torts." *Id.* at 91. Here, as in *Itar-Tass*, the place of the alleged tort is the United States, where Czuj published the works at issue. *See Id.* Therefore, the copyright laws of the United States shall control over the issues of infringement raised in the Motion.

## III.    Repropol's Standing

Czuj argues initially that plaintiff Repropol does not have standing to bring copyright claims on behalf of its members. If correct, the claims regarding all works as to which Repropol is the lone plaintiff with a purported interest must be dismissed. Czuj does not challenge the standing of any other plaintiff.

Although, as discussed above, Polish substantive law determines copyright ownership in this case, that choice of foreign law is subject to the qualification under United States federal procedural law that "an owner (including one determined according to foreign law) may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. § 501(b), which accords standing only to the legal or beneficial holder of an 'exclusive right.'" *Itar-Tass*, 153 F.3d at 91; *accord Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 94 (2d Cir. 2014) (§ 501(b) "does not permit copyright holders to choose third parties to bring suits on their behalf") (quoting *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991)). In addition, the Second Circuit has recognized that authors' associations asserting "that foreign law confers upon them certain exclusive rights to enforce the copyrights of their foreign members" have standing to bring suit on behalf of their members. *Authors Guild,* 755 F.3d at 94. Accordingly, whether Plaintiffs have standing to bring an action for infringement under United States law depends on whether they currently possess an exclusive right under 17 U.S.C. § 501(b).

To determine whether plaintiff Repropol currently possesses exclusive rights, the Court must assess how Polish law treats copyright ownership of news publications, and the transferability of such rights. *See generally Itar-Tass*. This assessment begins with Article 11 of Poland's Copyright Law, which sets forth the division of ownership rights as between authors and periodical publishers: "The producer or publisher shall have the author's economic rights in a collective work and in particular the rights in encyclopedias or periodical publications, and the authors shall have economic rights in their specific parts which may exist independently. It shall be presumed that the producer or publisher have the right to the title." Poland's Law on Copyright and Neighboring Rights ("Poland's Copyright Law"), at Art. 11, WIPO, *available at* http://www.wipo.int/wipolex/en/text.jsp?file_id=129377 (last visited March 24, 2017).

Unlike copyright law in the United States, under Polish law, "economic rights" are distinguished from "moral rights." (*See Id.* at Arts. 16-17.) Moral rights are those that "protect the link between the author and his/her work," and include: "1) to be an author of the work; 2) to sign the work with the author's name or pseudonym, or to make it available to the public anonymously; 3) to have the contents and form of the author's work inviolable and properly used; 4) to decide on making the work available to the public for the first time; 5) to control the manner of using the work." Poland's Copyright Law Art. 16. Economic rights, on the other hand, confer upon the holder "an exclusive right to use the work and to manage its use throughout all the fields of exploitation and to receive remuneration for the use of the work." *Id.* at Art. 17. With respect to transferability of rights, Polish law dictates that while economic rights can be transferred freely, moral rights cannot. *See Id.* at Arts. 16, 41(1)-(2) (an "author's economic rights may devolve upon other persons through inheritance or by contract" and "the person who acquires the author's economic rights may transfer them to other persons,"); Art. 16 (moral rights are "unlimited in time

and independent of any waiver or transfer," *Id.* at Art. 16).  *See Rudnicki v. WPNA 1490 AM*, 2009 WL 4800030, *10 (N.D. Illinois Dec. 10, 2009).

Because authors cannot be freed of their moral rights to a given work, the question before the Court is whether the "economic rights," or the rights to "work and manage its use throughout the fields of exploitation and to receive remuneration for the use of the work," were properly transferred to Repropol.  *See Rudnicki*, 2009 WL 4800030 at *11 (finding plaintiff did not have standing because he properly transferred his economic rights under Polish law via an employment contract).  Here, the Court finds nothing in the record to substantiate a transfer of economic rights to Repropol.  Plaintiffs assert that Repropol "is an Association of publishers and journalists, based in Poland[,] . . . established for the purpose of providing copyright protection for its member journalists and publishers, who attain membership by purchasing shares in the cooperative." (Mot. at 8.)  However, Plaintiffs have not provided any evidence that the exclusive rights to any of the works at issue in this case were transferred to Repropol.  Instead, Plaintiffs apparently take the position that Repropol enjoys the same economic rights over an individual article as the Publisher Plaintiffs by virtue of its existence as a "non-profit organization established through a decree of Polish Ministry of Culture." (Hoffman and Rurański Aff. ¶ 1; *see Id.* at ¶ 2 ("By virtue of creating our entity and adopting its statute under Polish laws, our organization acquired rights to monitor the media market, propose legislative changes, manage and oversee class-wide intellectual property rights of authors and publishers on their behalf and in their best interest."); *see also* Def. Opp. to Mot. ("Opp."), Dkt. Entry No. 66 at 4.)  However, aside from this lone statement made by people with a purported interest in this litigation, Plaintiffs have failed to provide any evidence— via, for example, an expert in Polish copyright law—that this is true.  While Repropol may believe their very existence confers standing upon them to protect the interests of the works at issue,

10

Plaintiffs must demonstrate this to the Court through admissible evidence. Here, it has failed to do so. Moreover, the Court's independent review of the provisions of Polish Copyright Law reveals no basis to support Repropol's standing to bring copyright claims for works to which it has not received the economic rights.

For this reason, Plaintiffs citation to *Itar-Tass* for the proposition that the Second Circuit has permitted "'reporters organization[s]'—similar to Repropol here—to assert claims on behalf of its members" is inapposite. (Mot. at 9 (quoting *Itar-Tass*, 153 F.3d at 93).) In *Itar-Tass*, the Second Circuit suggested, in dicta, that a "reporters' organization, may well be able in this litigation to protect the rights of the reporters whose articles were copied by [defendant]." *Itar-Tass*, 153 F.3d at 93. However, this observation was based on the district court's finding that Russian copyright law explicitly authorized "the creation of organizations 'for the collective administration of the economic rights of authors . . . in cases where the individual exercise thereof is hampered by difficulties of a practical nature.'" *Id.* (quoting 1993 Russian Federation Law on Copyright and Neighboring Rights ("Russian Copyright Law"), WIPO translation*, available at* http://www.wipo.int/edocs/lexdocs/laws/en/ru/ru049en.pdf (last visited March 24, 2017)). Plaintiffs state that "[t]he same is true under Polish law," but show no support for their statement other than self-serving citations to a deposition transcript of one of their witnesses and a declaration of two of Repropol's board members. Moreover, the Court finds nothing in Poland's Copyright Law that is similar to the provision in Russian Copyright Law highlighted by the court in *Itar-Tass*. (Mot. at 9 (citing Pl. R. 56.1 St. at ¶10).)[7]

---

[7]     Similarly, Plaintiff's citation to *Authors Guild* to support the proposition that an "association authorized by foreign law to administer its foreign members' copyrights has standing to seek injunctive relief on behalf of those members in U.S. court," is also inapplicable because Plaintiffs have made no showing that Polish law permits associations to administer members' copyrights.

Therefore, because the Court finds Plaintiffs have not made a sufficient showing that Repropol received the economic rights over any of the works at issue in this case, the Court finds that Repropol lacks standing to bring this case and the action is dismissed as to Repropol. However, the Court proceeds to assess the claims brought by the Publisher Plaintiffs whose standing is not contested by Czuj.[8]

## IV. Admissibility of Plaintiffs' Affidavits, Declarations and Exhibits

Czuj makes a number of objections to the evidence Plaintiffs have offered in support of the Motion, which the Court will address in turn. As an overall matter, the Court notes that the Motion certainly is not a model for how evidence in support of a summary judgment motion should be presented to a court. As explained in more detail below, Plaintiffs' presentation of the evidence in the Motion suffers from a number of deficiencies, including, among others: (i) failure to point to specific portions of the record to support their claims, (ii) failure to include helpful aids such as translations of the articles or redlines comparing Plaintiffs' articles to Czuj's; and (iii) an overall lack of completeness. Nevertheless, as explained in Section V, pp. 17-24, *infra*, despite these deficiencies, there remains sufficient evidence to support the Publisher Plaintiffs' claim of copyright infringement.

### A. Authors' and Publishers' Affidavits

Czuj contends Plaintiffs' motion for summary judgment should be denied because it largely is based on inadmissible affidavits. (*See* Opp. at 5-9.) Specifically, Exhibit D and Exhibits D1 through D21 contain affidavits of Repropol board members, "co-plaintiffs, their members, journalists, authors, and other supporting affidavits" that purport to confirm the violations set forth

---

[8]  Although Defendant does not contest the standing of the Publisher Plaintiffs, he does contest whether they have valid ownership rights to the works at issue, which the Court addresses below (§ V.B, pp. 19-21, *infra*).

in the Complaint. (Sabaj Aff. ¶ 5, Exhibits D-D21 (Dkt. Entry Nos. 65-9 through 65-31).) Czuj contends that the contents of these exhibits are inadmissible because the language contained in each affidavit stating that the affiant "discovered and was otherwise made aware of infringements by *Polska Gazeta* published in Brooklyn," is "not sufficient to demonstrate personal knowledge of what *Polska Gazeta* published and patently relies on inadmissible hearsay." (Opp. at 7.) Czuj argues that the affidavits only establish the affiants' authorship without serving as admissible evidence of similarity of copying. (*Id.*)

Rule 56(c) of the Federal Rules of Civil Procedure provides that supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). The Second Circuit has held that a court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay, or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000). "Alternatively, a court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." *Doe v. National Board of Podiatric Medical Examiners*, 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004). The test for admissibility of a summary judgment affidavit "is whether a reasonable trier of fact could believe the witness had personal knowledge." *Serrano v. Cablevision Systems Corp.*, 863 F. Supp.2d 157, 163 (E.D.N.Y. 2012). "The lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect the weight and credibility of the testimony, which have to be

determined by the trier of fact at trial." *Id.* (quoting *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp.2d 483, 504 (S.D.N.Y. 2005)).

Here, there is no need to strike any portions of these affidavits as Czuj's argument is not actually an attack on the admissibility of the affidavits, but rather the weight to be given to them. Indeed, Czuj has not provided any legal basis for the wholesale rejection of the affidavits themselves, but instead takes issue with the conclusory nature of the specific statements regarding the affiants' awareness of "infringements." (Opp. at 7.) The question of infringement is, of course, a legal one that will be decided by the Court. However, the Court is free to, and will, assess the remaining portions of the affidavits, most of which are from authors of articles that were republished by Czuj. In sum, because a reasonable trier of fact could trust that the affiants each possessed personal knowledge of the statements contained therein—including their layperson's belief that the republication constituted infringement—Czuj's application to strike these exhibits is denied.

### B. Newspaper Articles

In support of the Motion, Plaintiffs submitted as Exhibit E several sub-exhibits, each of which consists of two pages: first, a copy of an article from *Polska Gazeta*; and second, the corresponding article from one of Plaintiffs' publications. (*See* Sabaj Aff. at ¶ 6; Dkt Entry Nos. 65-32 through 65-42 (Exhibits E1 through E11).) In each instance, the article from Plaintiffs' publication appears to have been published prior to, or the same day as the *Polska Gazeta* article. (*See* Exhibit E1-11.) Moreover, although no translation or redline comparison was provided by Plaintiffs, a review by this Court reveals that the wording appears to be the same, or substantially similar, in both articles of each set.

Czuj argues that the sub exhibits consisting of Exhibit E are inadmissible because "no witness with personal knowledge has identified any of these materials as belonging to plaintiffs and no translation has been provided." (Opp. at 7.) Although the Court agrees that the better practice here would have been for Plaintiff to provide a single affidavit of someone with personal knowledge explaining that the second page of each Exhibit E sub-exhibit is one of Plaintiffs' articles, ultimately the Court need not disregard the majority of them in considering Plaintiff's motion.

As an initial matter, Federal Rule of Evidence 902(6) provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [p]rinted materials purporting to be newspapers or periodicals." Moreover, the Court is satisfied that Plaintiff has provided enough information (albeit in an incomplete and confusing way) from which one could determine that all but three of the sub-exhibits' second pages are from the Publisher Plaintiffs' publications. Specifically, eight of the eleven sub-exhibits are from the website Rzeczpospolita (www.rl.pl) (*see* E1, E3-E6, E9-E11), which is published by Presspublica (Pl. R. 56.1 St. at ¶3). Although Plaintiff did not properly cite to supporting evidence, Plaintiffs did attach to the motion an affidavit and deposition testimony to support Presspublica's ownership of Rzeczpospolita (*see* Declaration of Dariusz Bąk and Jan Piński ("Bąk and Piński Decl."), Dkt. Entry No. 65-11 (Exhibit D2); Deposition of Beata Pierzchala, Dkt. Entry No. 65-45 (Exhibit H) at 20-21), and Czuj admitted this fact in its response to Plaintiff's Rule 56.1 Statement (Def. Response to Pl. R. 56.1 St. at ¶3). Therefore, the Court accepts that the second page of sub-exhibits E1, E3 through E6 and E9 through E11 are all derived from Plaintiffs' publications.

However, the Court has not been able to find any admissible evidence attached to the Motion to confirm that the websites deser.pl and onet.pl, from which the second pages of sub-

exhibits E2 and E8 are derived, respectively, are from Plaintiffs' publications. Moreover, with respect to sub-exhibit E7, Plaintiffs submitted affidavits to show that Gazeta Wyborcza, the publisher of the second page of sub-exhibit E7, is owned by Agora S.A. (Affidavit of Robert Musial, Dkt. Entry No. 65-13 (Exhibit D4)), which, in turn, is listed as a member of Repropol on a document signed by the President of plaintiff Repropol (Exhibit D1 (Dkt. Entry No. 65-9).[9] However, as discussed above (Discussion § III, pp. 8-12, *supra*), Plaintiffs have not satisfied their burden to establish Repropol's standing in this action. Therefore, the Court will disregard sub-exhibits E2, E7 and E8 in assessing the Motion.

### C. Infringements Chart

Exhibit F of the Sabaj Affidavit contains a chart chronicling the copyright infringements purportedly committed by Czuj (the "Infringements Chart"). (Sabaj Aff. at ¶ 7; Dkt. Entry No. 65-43 (Exhibit F).) Plaintiffs' counsel states that he "caused [the chart] to be prepared for purposes of this litigation." (*Id.*) Czuj argues that the chart is not admissible because Plaintiffs have not made a showing that the items listed are themselves admissible. (Opp. at 8.) Moreover, Czuj contends that Plaintiffs' counsel lacks personal knowledge as to any of the articles referenced in the chart and Plaintiffs have failed to authenticate the chart. (Opp. at 7-8.)

Rule 1006 of the Federal Rules of Evidence "allows summaries and charts to be presented where the 'contents of voluminous writings, recordings, or photographs . . . cannot be conveniently examined in court.'" *Gill v. Arab Bank, PLC*, 893 F. Supp.2d 523, 536 (E.D.N.Y. 2012) (quoting Fed. R. Evid. 1006). "Materials submitted in support of or in opposition to a motion for summary

---

[9] Because Plaintiffs provided no translation of any Polish documents submitted in support of their motion, the Court used the free "Google Translate" service, available at translate.google.com, in order to confirm certain statements contained in those documents.

judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial." *Delaney v. Bank of America Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014).

In its present form, the Infringement Chart would not be admissible at trial. Although all of the information underlying the chart may be available publicly, thereby obviating the need to produce the information underlying it, the Court agrees with Czuj that Plaintiffs have not demonstrated adequately their ownership of all of the articles listed. Presumably, this could have been done easily, for example, by providing affidavits of persons with knowledge that each of the articles listed in the chart were published by Plaintiffs and that they correspond to substantially similar articles published by Czuj. While certain entries on the chart are from Rzeczpospolita, over which Presspublica adequately has demonstrated its ownership (*see* p. 15, *supra*), Plaintiffs have not shown they own the rights to dozens of other entries listed in the chart. Because Plaintiffs have failed to demonstrate that each of the entries are associated with Plaintiffs' publications, the Court will not consider the Infringements Chart in deciding the Motion. *See Faunus Group International, Inc. v. Ramsoondar*, 2015 WL 4557132, *9 (S.D.N.Y. July 22, 2015) (finding that a two-column chart containing a calculation of damages was inadmissible at trial because the movant failed to: (i) produce the documentation underlying the damages calculation, and (ii) demonstrate, among other things, "circumstantial guarantees of trustworthiness"). However, as discussed more fully below (*see* Discussion § V.C, pp. 21-23, *infra*), while the deficiency of the Infringement Chart ultimately does not doom Plaintiffs' copyright infringement claim, it does prevent this Court from conducting a sufficiently informed damages analysis.

## V.     Copyright Infringement

In order to establish a claim for copyright infringement, "a plaintiff must prove '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original.'" *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (quoting *Feist Pubs. Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In order to establish a prima facie case of copyright infringement, a plaintiff first must show that his work was actually copied and then s/he must show that the copying amounts to an improper or unlawful appropriation. *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). "Actual copying may be established either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Id.* (internal quotation marks and citation omitted).

### A. Copyright Validity

As an initial matter, copyright protection does not extend to facts because the law of copyright is founded on the originality of expression, whereas facts, by their fundamental nature, are never original to an author. *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999). However, although the factual underpinnings of the news itself is not copyrightable, "copyright does protect 'the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments.'" *Id.* (quoting *Wainwright Securities Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 95-96 (2d Cir. 1977)); *Feist Publications, Inc.*, 499 U.S. at 348 (finding that "factual compilations, . . . , may possess the requisite originality" peculiar to copyrightable material). Moreover, Polish Copyright Law expressly provides for instances "in which authors of press reports 'shall have the right to obtain remuneration for the use of their works,'" including for "'update[s] on political, economic, or religious issues.'" *Rudnicki v. WPNA 1490 AM*, 2009 WL 4800030, at *8 (N.D. Ill. Dec. 10, 2009) (quoting Polish Copyright Law Art.

25). Czuj does not appear to dispute that the works at issue are subject to copyright protection. (*See generally* Opp.)

Moreover, "[w]hile copyrights that originate in the United States must be registered before the owner may sue for infringement, the Berne Convention does not require the owner of a foreign copyright to register in the United States before seeking redress for infringement of works originating in foreign nations, . . . , that are signatories to the convention." *Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 503 F. Supp.2d 577, 584 (E.D.N.Y. 2007) (citation omitted); *see Jose Armando Bermudez & Co. v. Bermudez Intern.*, 2000 WL 1225792, at *10 (S.D.N.Y. Aug. 29, 2000) (noting that "[n]o proof of registration is required if the work for which plaintiff seeks protection has been authored in a foreign country covered by the applicable Convention," and that the Berne Convention is such an applicable convention). Here, the news articles, editorial pieces and photographs at issue originated in Poland and, therefore, do not require copyright registration with the United States Copyright Office under the provisions of the Berne Convention.

### B. Copyright Ownership

Czuj questions the sufficiency of the evidence of the Publisher Plaintiffs' copyright ownership arguing that (i) Super Express has not submitted any work it can claim was copied, and (ii) Presspublica's ownership claims are "[w]eak and [d]isputed." (Opp. at 9-10.) Having rejected the Infringements Chart, the Court agrees with Czuj that there does not seem to be any evidence before the court to substantiate Super Express's ownership over any of the works currently before the Court. However, as discussed above (p. 15, *supra*), the Court finds Plaintiffs have submitted sufficient evidence to substantiate Presspublica's ownership over the works published by Rzeczpospolita, including the six Rzeczpospolita articles attached as sub-exhibits to Exhibit E.

According to Poland's Copyright Law, an "employer, whose employee has created a piece of work within the scope of his/her duties resulting from the employment relationship, shall, upon acceptance of the work, acquire the author's economic rights within the limits resulting from the purpose of the employment contract and the congruent intention of the parties." Poland's Copyright Law at Art. 12. Moreover, even if an author's piece did not fall within the scope of his/her employment, another provision of Poland's Copy Right Law provides that "[t]he producer or publisher shall have the author's economic rights in a collective work and in particular the rights in encyclopedias or periodical publications, and the authors shall have economic rights in their specific parts which may exist independently. It shall be presumed that the producer or publisher have the right to the title." Poland's Copyright Law at Art. 11.

Czuj claims that Presspublica's ownership cannot be established because "evidence shows that authors can be freelancers who have their own copyrights, or independent contractors who have made oral rather than written copyright assignments to the publishers." Tellingly, however, the only evidence Czuj cites in support of that assertion is his own declaration. (Opp. at 11.) Indeed, Czuj has not provided any factual evidence to show that any, much less all, of the authors of the articles at issue were freelancers. Moreover, Czuj has not provided any legal support for its claim that such a status would deprive Presspublica of ownership rights. The Court's review of Poland's Copyright Law reveals that, even if an author retained the economic rights to a particular article written outside of an employment agreement, the publisher would retain ownership over certain aspects of a given article. *See* Poland's Copyright Law at Art. 11.

Therefore, the Court finds that Presspublica sufficiently has demonstrated ownership over some of the works at issue. The Court notes, however, that in order for Plaintiffs to substantiate their damages amount (which they should have done through the Motion), they will need to

explain, for each article, the scope of their ownership rights and provide proof thereof. Acceptable proof may include, but is not limited to, translated employment agreements and/or affidavits from the authors of each work explaining when and how their economic rights were transferred to Plaintiffs.

### C. Copying of Original Works

Although the Court has declined to accept Plaintiffs' Infringements Chart (Exhibit F) due to the fact that Plaintiffs have failed to demonstrate that all the entries on the chart are from Plaintiffs' publications (*see* Discussion, § IV.C, pp. 16-17, *supra*), Plaintiffs nonetheless have provided other evidence to establish Czuj's unauthorized copying of Plaintiffs' original content, including Czuj's acknowledgment of such copying.

That Czuj, as president and editor-in-chief of *Polska Gazeta* copied articles from Plaintiffs' publications is not seriously in dispute.[10] The most obvious evidence of copying consists of examples of articles from Plaintiffs' publications that subsequently were published entirely, or nearly, verbatim in *Polska Gazeta*. (*See e.g.*, E1, E3-E6, E9-E11.) Further, during his deposition, Czuj admitted that, to find information to include in *Polska Gazeta*, his employees solely used sources on the internet that they found using search engines, and that *Polska Gazeta* would then republish these articles. (Czuj Tr. at 72-77.) With respect to news articles, *Polska Gazeta* "very frequently" would republish an article in its entirety, but change the headline to it. (*Id.* at 89.) Opinion pieces would be republished word for word. (*Id.* at 107.)

---

[10]    Czuj does not appear to contest Plaintiff's assertion that his role in overseeing *Polska Gazeta*'s alleged infringement would make him vicariously liable for such infringement. (*See* Mot. at 6.) Indeed, based on the evidence submitted, it appears clear that Czuj had "the right and ability to supervise the [alleged] infringing activity and also has a direct financial interest in such activities." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *accord Broad. Music, Inc. v. JJ Squared Corp.*, 2013 WL 6837186, at *5 (E.D.N.Y. Dec. 26, 2013).

The only unresolved question, therefore, is whether Czuj's copying constitutes an improper appropriation of Plaintiffs' content. On this point, Czuj contends that *Polska Gazeta* had authorization to republish certain articles pursuant to reciprocal sharing agreements. (Opp. at 13.) If established, this may constitute a defense to Plaintiffs' copyright infringement claim because "[a]nyone who is authorized by the copyright owner to use the copyrighted work in any way specified in the statute or who makes fair use of the work is not an infringer of the copyright with respect to such use." *Sony Corporation of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

However, Czuj has not presented any concrete evidence of such authorization, but rather acknowledges that no written agreements exist with any of Plaintiffs' newspapers. (Czuj Dep. at 77-78.) Czuj rests on his assertion that, if he is permitted to proceed to trial, he would testify as to four newspapers "in which he currently has reciprocal sharing agreements" (Opp. at 13), contending that the "beauty of this business" is no written authorization is necessary to republish content. (*Id.*) In his declaration, Czuj discusses four such agreements and he purports to attach evidence of one as Exhibit C to his declaration. (Czuj Decl. at ¶ 3 & Ex. C.) Significantly, none of the four publications are owned by Plaintiffs, and Czuj has not attached anything to corroborate the existence of any such agreements with Plaintiffs' publications. (*Id.* at ¶ 3.) Moreover, while Czuj contends that "for many years we had permission to reprint articles and photographs" appearing in Rzeczposolita (*Id.* at ¶ 4), Czuj presents no evidence to substantiate that statement, and indeed, has done nothing to rebut the affidavits from representatives of Plaintiffs' publications that such agreements do not exist (*see* Bąk and Piński Decl. at ¶ 13).

Because Czuj has not submitted evidence to support the existence of reciprocal sharing agreements, his reliance on *Dallal v. The N.Y. Times Co.*, 2006 WL 463386 (2d Cir. Feb. 17, 2006)

(Summary Order) is misplaced. In *Dallal*, the court found disputes of material facts existed as to whether defendant properly could invoke the defense of equitable estoppel to counter a copyright infringement claim because plaintiff had presented sufficient evidence to counter three of the doctrine's four elements. *Id.* at *2. In particular, plaintiff demonstrated that "he modified his invoices to state that he was granting the newspaper a 'one-time only, first exclusive use' of his photographs" and presented evidence of "various oral conversations" in which plaintiff objected to defendant's "'unauthorized' use of his photographs on the Internet." *Id.* By contrast here, Czuj contends that oral reciprocal sharing arrangements exist, but fails to attach any verifying evidence. These bald assertions alone are insufficient to rebut the affidavits Plaintiff presented showing these agreements do not exist.

Therefore, because (i) Czuj's copying of Plaintiffs' articles is undisputed, and (ii) Czuj cannot rebut Plaintiffs' evidence that such copying was unauthorized, Plaintiffs are entitled to summary judgment on their copyright infringement claims.

### D. Damages

Although the Court finds Plaintiffs are entitled to summary judgment on their copyright infringement claims, the Motion does not set forth any information from which the Court can determine with any reliability whatsoever the proper calculation of damages in this case. As discussed earlier, the Court rejects the Infringements Chart (*see* Discussion, § IV.C, pp. 16-17, *supra*), which appears to be the only damages related evidence submitted by Plaintiffs. However, even assuming the Court were to accept that the chart sets forth a complete and accurate list of the articles Czuj copied without authorization, Plaintiffs also have not set forth any information concerning the amount of their actual damages, nor what statutory damages might be appropriate in a case of this nature. Instead, Plaintiffs simply state that the Copyright Act authorizes damages

23

of between $700 and $30,000 (and up to $150,000, if willful) and, remarkably, apparently expects the Court to determine blindly what amount within that range Plaintiffs deserve for each instance of infringement. The Court declines to do so. However, the Court will permit Plaintiffs to move for damages at a later date, following settlement discussions before the magistrate judge.

## VI.    Plaintiffs' Additional Claims

Plaintiffs also move for summary judgment on their additional claims for violations of the DMCA, misappropriation and fraud, unjust enrichment, unfair and deceptive practices, false designation of origin, and unfair competition. The Motion gives short shrift to each of these claims, spending less than four pages *total* discussing these six claims. (Mot. at 17-24.) Plaintiffs do little more than recite the elements of each claim and state in conclusory nature that Czuj's conduct satisfies these elements. Indeed, at no point in Plaintiffs' discussion of these claims do they cite any evidence whatsoever to support a finding that Czuj is liable for these claims.

Similar to the Court's finding with respect to a damages calculation for Plaintiffs' copyright infringement claim, the Court declines to do Plaintiffs' work for them. Accordingly, Plaintiffs' motion for summary judgment on these claims is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff Repropol is dismissed from this case for lack of standing to proceed. In addition, Plaintiffs' motion for summary judgment is granted as to their copyright infringement claim and otherwise is denied. The parties are directed to contact United States Magistrate Judge James Orenstein's chambers within two weeks of the date of this Opinion and Order to schedule a settlement conference. If settlement discussions are unsuccessful, within fourteen (14) days of the final settlement conference, Plaintiffs shall file their motion for damages, which must include at least the following: (i) a chart, listing each instance of alleged copyright

infringement; (ii) the exact amount of damages Plaintiffs seek; and (iii) case law supporting Plaintiffs' damages request. The chart shall be accompanied by: (a) a declaration or declarations authenticating Plaintiffs' ownership over each work and providing the legal and factual basis for the ownership claim; and (b) copies of, or the internet location of, each of Plaintiffs' works, and copies of, or the internet location of, the corresponding infringing articles from *Polska Gazeta*.

Within thirty (30) days of the final settlement conference, if settlement is unsuccessful, the parties must submit for the district judge's approval their Joint Pretrial Order.

SO ORDERED.

Dated:  Brooklyn, New York
        March 24, 2017

_____
            /s/
        DORA L. IRIZARRY
           Chief Judge