UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SUPER EXPRESS USA PUBLISHING CORP., et al.,   REPORT AND
                Plaintiffs,   RECOMMENDATION
        - against -
                                                              13-CV-2814 (DLI) (JO)

SPRING PUBLISHING CORP., et al.,
                Defendants.
----------------------------------------------------------------------X

James Orenstein, Magistrate Judge:

        Plaintiffs Super Express USA Publishing Corp. ("Super") and Presspublica Sp. z o.o. ("Presspublica") have accused defendants Spring Publishing Corp. ("Spring") d/b/a Polska Gazeta and Janusz Czuj ("Czuj") of copyright infringement and related torts and statutory violations arising from the defendants' unauthorized publication of certain articles and photographs. *See* Docket Entry ("DE") 36 (Amended Complaint). Spring has defaulted, and the court has found Czuj liable for the alleged copyright violations and referred the matter to me to recommend the disposition of the plaintiffs' motion for a default judgment against Spring and to assess damages as to both defendants. *See* Entry of Default dated Feb. 27, 2015; DE 54 (motion for default judgment); DE 72 (Opinion and Order resolving motion for summary judgment) ("Opinion"); Orders dated March 24 and June 1, 2017.[1] I now make this report, and for the reasons set forth below, respectfully recommend that the court grant a default judgment against Spring on the plaintiffs' copyright claim, enter judgment against both defendants jointly and severally in the total amount of $155,250 (reflecting the minimum statutory award of $750 for each of the 207 infringing articles as to which the plaintiffs have sufficiently demonstrated their ownership), dismiss all of the plaintiffs' remaining claims, and close this case.

---

[1] The court has dismissed defendant Andrzej Czuj and plaintiff Repropol-Polish Association of Publishers. *See* Order dated Sept. 2, 2014; Opinion at 24.

I.  Background

I assume the reader's familiarity with the history of this case, as set forth in the Opinion on the motion for summary judgment. *See* Opinion at 2-4. Briefly stated, plaintiff Presspublica publishes two daily newspapers in Poland: *Rzeczpospolita* and *Uważam Rze*, and plaintiff Super publishes a daily newspaper in the United States marketed to Polish Americans. Spring published the *Polska Gazeta* in the United States, and Spring's founder and sole owner, Czuj, is the latter publication's president and editor-in-chief. Although both defendants initially appeared in response to the Complaint, Spring ultimately defaulted. *See* Clerk's Entry of Default dated Feb. 27, 2015. The parties then submitted their briefs on the plaintiffs' motion for default judgment against Spring. *See* DE 54 (motion); DE 54-2 ("Default Memo."); DE 61 ("Default Opp."); DE 64-2 ("Default Reply").

The plaintiffs and Czuj continued to litigate the case, and the plaintiffs eventually moved for summary judgment. *See* DE 65. In partially granting that motion, the court found that Czuj, without authorization, published in the *Polska Gazeta* substantially similar versions of some works to which the plaintiffs held copyrights, and therefore found him liable on the copyright claim. *See* Opinion at 17-23. However, the court found that the plaintiffs had failed to establish their damages to any reasonable certainty, and had also failed to establish that they were entitled to a finding of liability on any of their other tort or statutory claims. Accordingly, the court denied summary judgment on the other claims and allowed the plaintiffs an opportunity to establish their damages with more precision. *See id.* at 23-24. Thereafter, the parties submitted papers relating to damages as summarized below: *See* DE 75 (plaintiff's supporting memorandum) ("Memo."); DE 75-1 (plaintiff's counsel's supporting declaration, with exhibits) ("Sabaj Aff."); DE 84 (opposing memorandum) ("Opp."); DE 84-1 (Czuj's opposing declaration, with exhibits) ("Czuj Decl."); DE 86 (reply memorandum) ("Reply").

II.    Discussion

    A.    Threshold Issues

The two defendants are in different procedural postures: while the court has found Czuj liable on the copyright claim, Spring defaulted in 2015 but its liability has not yet been formally established. Nevertheless, it is apparent that the Amended Complaint's well-pleaded allegations as to Spring, the truth of which are established by its default, suffice to establish its liability on the copyright claim, and I therefore consider damages as to both defendants.[2] Moreover, the defendants take no issue with the plaintiffs' assertion that they should be held jointly and severally liable. *See* Memo. at 3; Opp. at 9-11; *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.,* 778 F.2d 89, 92 (2d Cir. 1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers"). In addition, I conclude that the same damages should be assessed against both defendants: the plaintiffs adduce the same evidence as to each defendant, and neither defendant suggests that the court should distinguish between them for purposes of determining an appropriate award.

Assuming the court agrees that Spring's default and the Amended Complaint's well-pleaded allegations suffice to establish Spring's liability on the copyright claim, the plaintiffs must at this stage establish their damages against each defendant with reasonable certainty; in particular, Spring's

---

[2] Spring filed its response to the motion for default judgment before the court ruled on the motion for summary judgment against Czuj. The arguments in that response are largely duplicative of matters addressed elsewhere. Spring's argument that plaintiff Repropol lacked standing, *see* Default Opp. at 18-24, is moot as a result of the court's dismissal of that plaintiff. To the extent Spring raised legal challenges to the remaining plaintiffs' copyright ownership, *see id.* at 3-9, 24-27, they were likewise resolved by the court's Opinion, which ruled on some issues and referred to me questions about the ownership of the copyright as to specific items. Similarly, Spring's concerns about the inadequacy of proof as to damages on the copyright claim, *see id.* at 9-15, parallels the court's concerns that resulted in the instant referral. Finally, to the extent Spring contested the plaintiffs' claim under the Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA"), *see* Default Opp. at 16-18, I address the matter below. Spring did not address any of the remaining causes of action.

default does nothing to establish the plaintiffs' damages against that defendant. A default establishes the truth only of well-pleaded allegations concerning liability; even after a default, however, a plaintiff must establish its damages "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

All of the plaintiffs' remaining claims appear to have been effectively abandoned and should therefore be dismissed. The parties to the damages litigation have not addressed those other claims at all. In their initial memorandum in support of the motion for default judgment against Spring, the plaintiffs similarly ignore all claims other than the first cause of action for copyright infringement. It is only in their reply brief on default, and then only in response to an argument raised by Spring, that the plaintiffs address one of those other claims: the sixth cause of action under the DMCA. *See* Default Reply at 8-9. In doing so, the plaintiffs offer only cursory arguments as to liability and none as to the amount of damages. In any event, the Amended Complaint offers little more than the conclusory allegation that "Defendants have acted in violation of 17 U.S.C. [§] 1202 (a) and (b)," Amended Complaint ¶ 77, and another equally conclusory allegation that parrots the statutory elements. *Id.* ¶ 78. In particular, the pleading does not explain how any of the factual allegations that precede the conclusory allegations satisfy the statute's substantive requirements. *See Sheldon v. Plot Commerce*, 2016 WL 5107072, at *13 (E.D.N.Y. Aug. 26, 2016) (report and recommendation) (a DMCA claim must "allege (1) the existence of [Copyright Management Information] on the [work in question]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally" (citing cases)), *adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). I therefore respectfully recommend that, as it did in resolving the summary judgment motion,

4

the court should again decline "to do the Plaintiffs' work for them," Opinion at 24, and instead dismiss as abandoned the second through ninth causes of action.[3]

    B.    <u>Damages</u>

To secure damages for the infringement of its copyright as to any article or photograph, the plaintiffs must first establish that they own the right to that item and either establish their actual damages flowing from the infringement of that right or elect statutory damages. *See* 17 U.S.C. § 504. The plaintiffs seek a total damages award of $595,500, which they characterize as $2,000 in actual damages for each of 296 items owned by Presspublica and $3,500 for one article and one photograph owned by Super.

    1.    <u>Ownership</u>

In resolving the motion for summary judgment and referring the case to me to analyze damages, the court provided the following guidance:

> [I]n order for Plaintiffs to substantiate their damages amount … they will need to explain, for each article, the scope of their ownership rights and provide proof thereof. Acceptable proof may include, but is not limited to, translated employment agreements and/or affidavits from the authors of each work explaining when and how their economic rights were transferred to Plaintiffs.

Opinion at 20-21. I therefore proceed to consider whether the plaintiffs have met this burden with respect to the items at issue. With respect to Presspublica, those items include 281 articles in *Polska Gazeta* that are substantial copies of works originally published in *Rzeczpospolita* and nine such articles

---

[3] Such a result will cause the plaintiffs no prejudice, as they have not identified any damages that are uniquely attributable to any non-copyright cause of action. Thus, an award on any such cause of action would in any event be impermissibly duplicative of the award I recommend below on the copyright claim.

that are substantial copies of works originally published in *Uważam Rze*.[4] With respect to Super, the items at issue are one allegedly infringing article and one allegedly infringing photograph.

        a.      Presspublica

To establish ownership of the economic rights in the works at issue, the plaintiffs have submitted an affidavit by Dariusz Bąk, the principal of Presspublica's successor. DE 75-11 ("Bąk Aff."). Bąk explains that all of the authors and photographers whose works the plaintiffs published signed standard employment contracts, a sample copy of which he provides as an exhibit (along with an English translation of that sample). *See id.* ¶¶ 6-7; DE 75-12 (sample contract); DE 75-13 (English translation) ("Contract"). That standard contract explicitly assigns to Presspublica the copyright ownership of the employed journalist's work. *See* Contract ¶ 1.[5] Thus, to the extent that the plaintiffs demonstrate that the specific individual authors of the works at issue signed such contracts, I conclude that they have established their ownership of the economic rights relating to those works. While Bąk's affidavit lists the authors of most of the allegedly infringed works as having signed the standard contract, a comparison of that list with the chart of infringing works reveals 83 such works – 80 published in *Rzeczpospolita* and three in *Uważam Rze* – whose authors do not appear on Bąk's list. *Compare* Bąk Aff. ¶ 6 *with* DE 75-10 ("Infringements Chart"). I therefore

---

[4] The plaintiffs have submitted copies of, and internet addresses for, the allegedly infringed original works published by the two newspapers, as well as copies of the corresponding allegedly infringing articles from the *Polska Gazeta*. *See* DE 75-5 ¶ 15; DE 77-79 (original works and corresponding *Polska Gazeta* copies). I have reviewed them and conclude that the plaintiffs have successfully established that each work at issue is a substantial copy of an allegedly infringed original work.

[5] The defendants seize on an obvious typographical error in Bąk's affidavit to argue that Presspublica's standard contract did not convey such rights. *See* Opp. at 3 (citing Bąk Aff. ¶ 7). Although the defendants accurately quote Bąk's affidavit, they ignore the contractual language itself. The lapse is understandable, albeit wholly improper, as the text of the contract explicitly contradicts the defendants' argument on this point. *See* Contract ¶ 1; Reply at 3 n.2 (quoting same).

conclude that the plaintiffs have established their ownership of 207 infringed works: 201 originally published in *Rzeczpospolita* and six originally published in *Uważam Rze*.

          b.      <u>Super</u>

Super seeks damages for one article and one photograph but has failed to establish with sufficient specificity its ownership of any infringed work. Super's manager, Dariusz Porzezynski, has submitted an affidavit in support of Super's claim, *see* DE 75-5 ("Porzezynski Aff."), but that document does not suffice. Super appears to contend (although it never explicitly says so) that the works for which it seeks damages are an article from 2006 about the Polish Prime Minister making a spelling error, and the accompanying photograph of the Prime Minister. *See id.* ¶ 9. What *Polska Gazeta* appropriated, however, does not seem to have been that original 2006 article, but a later one written in 2011 by an entity named "Deser.pl" that referred to the earlier article and included the same photograph of the Prime Minister. *See id.*[6] The *Polska Gazeta* ran the 2011 article along with the Prime Minister's photograph, allegedly without crediting either Deser.pl or Super. *See id.* However, the exhibit that the affidavit cites in support of that proposition is a copy of a page from the *Polska Gazeta* that does mention both deser.pl and Super under the image of the Polish Prime Minister. *See* DE 75-8. More important, Super does not sufficiently demonstrate its copyright ownership of either the article or the photograph. The affidavit makes clear that the article the defendants published in 2011 was the work of Deser.pl, not Super, and Super makes no showing of any ownership of that article. As to the photograph, Super's manager attests that it was taken by an employee of Super, *see id.* ¶ 10, and that all such employees "agree, at the time of employment, that Super Express holds the copyright to … photos created for the newspaper." *Id.* ¶ 11. The court cannot test that assertion,

---

[6] The plaintiffs do not explain what Deser.pl is. I take notice that the internet address "deser.pl" leads to a Polish language news web site. *See* deser.pl (last accessed on February 23, 2018).

7

however, because the record neither identifies the photographer nor includes a copy or translation of the standard employment contract so described (notwithstanding the affiant's assertion that a translation of the standard agreement is attached, *see id.*). I therefore conclude that Super has not satisfied the court's requirement to show ownership of any works for which it seeks infringement damages.

### 2. Election of Statutory or Actual Damages

The Copyright Act provides the plaintiffs an option of electing either actual or statutory damages "any time before final judgment is rendered." 17 U.S.C. § 504(c)(1). The plaintiffs have previously and repeatedly elected to pursue statutory damages, but now reverse course and seek an approximation of actual damages instead. *See* DE 1 (Complaint) ¶ 94; DE 57 (letter motion dated March 24, 2015) at 2; Reply at 8-9. As the defendants correctly observe, a plaintiff's election to seek statutory damages normally precludes a later change of heart. *See* Opp. at 4 & n.1 (citing cases). There may be an exception, however, where the change is made quickly and causes the defendant no prejudice – although it appears to be one that is recognized primarily in the context of cases in this circuit that decide against applying it. *See, e.g., Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 232 F. Supp. 3d 384, 392 (S.D.N.Y. 2017) ("[t]he Court sees no legal or logical basis for applying the 'gotcha' rule envisioned by Defendant" – but holding that the plaintiff's failure to adduce evidence of actual damages was a "de facto election of statutory damages"), *appeal docketed*, No. 17-1953 (2d Cir. June 21, 2017); *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1486640, at *2-3 (S.D.N.Y. Apr. 11, 2011) (acknowledging possibility of renouncing an election of statutory damages but not allowing such a change where it was sought one month prior to trial and would prejudice defendant). The defendants identify no prejudice arising from an award of actual, rather than statutory damages. Moreover, it appears the court, in resolving the summary judgment motion, contemplated at least

the possibility of awarding actual damages. *See* Opinion at 23 (noting that the plaintiffs "have not set forth any information concerning the amount of their actual damages, nor what statutory damages might be appropriate in a case of this nature").

Nevertheless, I conclude that the court should award statutory rather than actual damages for two reasons. First, the plaintiffs' change in course comes too late, and with too little evidence of any actual damages to fit comfortably within the narrow exception carved out in prior cases. The plaintiffs adhered to their election of statutory damages for years, and throughout the discovery phase of the litigation. *See* DE 50 (minute order dated Oct. 16, 2014, noting completion of discovery); DE 57 (letter from plaintiff's counsel dated Mar. 24, 2015) at 2 (asking to determine damages based on documentary evidence rather than live testimony "because Plaintiffs have elected to seek statutory damages[,]" which obviates the need for proof of "actual profits or losses"). Moreover, in seeking to prove their approximation of actual damages, the plaintiffs have adduced no evidence of any actual losses or of the defendants' profits – they acknowledge that they cannot do so, *see* Memo. at 3 – but have instead sought to demonstrate a measure of the average licensing value of the infringed works. *See id.* at 3-7; *cf. Latin Am. Music Co., Inc.*, 232 F. Supp. 3d at 392 (finding plaintiff made *de facto* election of statutory damages by attempting to prove actual damages with nothing more than evidence of a prior licensing agreement between the parties).

Second, an award of statutory damages does not prejudice the plaintiffs. The court has "wide discretion … in setting the amount of statutory damages" and may consider a wide array of factors in determining an appropriate award, including, among other things, "expenses saved and the profits reaped by the infringers[,] …. the revenues lost by the plaintiff, … the value of the copyright, … and the deterrent effect on others besides the defendant." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116–17 (2d Cir. 1986) (internal citations omitted); *see also Rogers v. Ecolor Studio*, 2013 WL

9

752256, at *6 (E.D.N.Y. Feb. 7, 2013) (report and recommendation; citing same and listing factors), *adopted*, 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013). Thus, the court can take the plaintiffs' evidence of licensing fees into account in determining an appropriate award of statutory damages without needlessly watering down the concept of actual damages by pretending that they measure the plaintiffs' actual losses with any reasonable certainty.

I do not mean to suggest that the court would err by awarding actual, rather than statutory damages. In the absence of any other plausible measure of actual damages, the plaintiffs' reliance on an approximation of lost licensing fees might well be permissible despite its lack of certainty. *See, e.g.*, *On Davis v. The Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001) ("Given our long-held view that in assessing copyright damages courts must necessarily engage in some degree of speculation, … some difficulty in quantifying the damages attributable to infringement should not bar recovery.") (internal quotation omitted; citing, *inter alia*, *Szekely v. Eagle Lion Films, Inc.*, 242 F.2d 266, 269 (2d Cir. 1957) (where "legal injury is certain ... [w]e should not allow difficulty in ascertaining precisely the value of the right destroyed, which difficulty arises largely from the destruction, to enable the infringer to escape without compensating the owner of the right")). Nevertheless, as discussed below, the plaintiffs' evidence about such fees is itself somewhat speculative. As a result, I recommend against an award of actual damages. An award of statutory damages is more consistent with controlling law in light of the procedural posture of this case, a more straightforward assessment of the relationship between the defendants' misconduct and the resulting harm, and ultimately causes no prejudice to the plaintiffs. Indeed, if the court were to award actual damages based on the plaintiffs' evidence about licensing fees, I would conclude that the award should be less than the statutory minimum.

3. Statutory Damages

Applicable law entitles the plaintiffs to an award of statutory damages of $750 to $30,000 per infringement. 17 U.S.C. § 504(c)(1).[7] In litigating their motion for summary judgment, the plaintiffs simply cited that applicable range "and, remarkably, apparently expect[ed] the Court to determine blindly what amount within that range Plaintiffs deserve for each instance of infringement." Opinion at 24. Not surprisingly, the court declined to do so.

The court has wide discretion to consider all relevant circumstances in fashioning an appropriate award of statutory damages. The plaintiffs have approximated their actual damages by using as a starting point the costs they pay to secure the rights to publish articles. I reproduce below, in its entirety, the reasoning the plaintiffs use to propose an award of $2,000 per infringement.

> Despite Defendants' erroneous belief, newspaper content is not cheap and is never free. In addition to their staffs of journalist and photographers, Plaintiffs have had to pay when they have used content created by non-staff members. For example, Super Express occasionally pays freelancers for articles who charge between $400 to $900 for the written content alone. Plaintiffs have to pay a large monthly fee to use archived pieces from the Associated Press. Using more current newsworthy pieces costs significantly more. Furthermore, newspapers charge other newspapers licensing fees to reprint pieces they originally authored.
>
> Because the pieces stolen by Defendants typically were large front-page breaking-news articles that included photographs, Plaintiffs have calculated that they carry an average value of $2,000.
>
> The use of such benchmarks is appropriate. Benchmark transactions, *i.e.* comparable licenses of the copyrighted work, are appropriate starting points.

Memo. at 6-7 (citations omitted).

Such reasoning is a useful starting point, but without more it is far too speculative to serve as a basis for awarding damages. While the plaintiffs assert an average licensing value of $2,000 per

---

[7] The maximum award may be higher if the infringement was willful. *Id.* Even assuming the defendants' willfulness, I would not recommend a higher award under the circumstances of this case.

11

article, their affiant suggests a much lower value: he avers that Presspublica "would have charged anyone, especially competing Defendants at least … $1,000 per article" in licensing fees. Bąk Aff. ¶ 13. Moreover, simply because the plaintiffs would have sought such fees does not mean that they would have secured them. Absent some evidence of actual bargaining for such licensing rights, it would be pure speculation to assume what the result would be. To the extent the record contains any evidence on that score, it suggests that the per-article licensing fees that the plaintiffs could have secured would be well under $750. *See* DE 75-1 (declaration of plaintiffs' counsel) ¶ 3 (citing request for price quote to reprint an article); DE 75-4 (responsive price quote noting "Product fees begin at … $375 for business use" and that "Licensing fees … begin at $250"); DE 75-16 (quote of licensing fees of $266 to publish one article from the Wall Street Journal); DE 75-17 (quote of licensing fee of $450 to publish two articles from the New York Daily News).[8]

Thus, if the court were to award an actual damages based on an approximation of the average infringed works' hypothetical licensing value, I would recommend an award of $250 per article, or a total of $51,750 for the 207 infringed articles for which the plaintiffs have proved ownership. However, statutory damages must be at least $750 per infringement. 17 U.S.C. § 504(c). Accordingly, in light of evidence suggesting that the minimum statutory award will overcompensate the plaintiffs for any cognizable loss, and in the absence of any other stated reason to exceed the minimum award, I respectfully recommend a statutory damages award of $750 per infringement, or a total of $155,250 for the 207 infringed articles.

---

[8] *See also* Bąk Aff. ¶ 9 (asserting that Presspublica paid the Associated Press $3000 per month for the right to reprint a "few archived articles"). The affiant attests that he has attached an invoice reflecting such transactions, *id.*, but there is none in the record. Absent further details, the assertion does not support a conclusion that the infringed works would command an average licensing fee greater than the minimum statutory damages award of $750. The defendants suggest that an appropriate licensing fee would be between $10 and $50 per article. *See* Opp. at 9; Czuj Decl. ¶¶ 2-3.

12

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court grant a default judgment against Spring on the plaintiffs' copyright claim, enter judgment against both defendants jointly and severally in the total amount of $155,250 (reflecting the minimum statutory award of $750 for each of the 207 infringing articles as to which the plaintiffs have sufficiently demonstrated their ownership), dismiss all of the plaintiffs' remaining claims, and close this case.

IV.    Objections

Any objections to this Report and Recommendation must be filed no later than March 12, 2018. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        February 23, 2018

                                                        /s/
                                                James Orenstein
                                                U.S. Magistrate Judge